1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOHNNIE SENTEZ SMITH,                          No.  2:14-cv-0537 AC

12              Plaintiff,

13        v.                                         ORDER

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
15
                Defendant.
16

17

18        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying his application for Supplemental Security Income ("SSI") under

20   Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.  SSI is paid to

21   financially needy disabled persons.  42 U.S.C. § 1382(a); Washington State Dept. of Social and

22   Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the

23   Act, § 1381 et seq., is the Supplemental Security Income (SSI) scheme of benefits for aged, blind,

24   or disabled individuals, including children, whose income and assets fall below specified

25   levels . . .").

26   ////

27   ////

28   ////

1

1   I. PROCEDURAL BACKGROUND

2   Plaintiff applied for SSI on October 25, 2010 (protective filing date), alleging a disability

3   onset date of March 13, 2010.  Administrative Record ("AR") 11.[1]  Plaintiff's application was

4   disapproved initially, and on reconsideration.  AR 77-81 (February 2, 2011) & 83-90 (July 15,

5   2011).  Plaintiff thereupon requested a hearing before an administrative law judge ("ALJ").

6   AR 93-94.  On June 14, 2012, a video hearing was held before ALJ Philip E. Callis, who presided

7   by video from Oakland, CA.  AR 23-40 (transcript of hearing).  Plaintiff, who was represented by

8   counsel, appeared and testified at the hearing by video from Stockton, CA.  AR 28-36.  A

9   vocational expert also appeared and testified at the hearing.  AR 36-39.

10   Plaintiff's counsel made an opening statement at the hearing.  AR 27-28.  Counsel

11   asserted that plaintiff's "anti-social personality disorder meets listing 12.08."  AR 28.

12   "Listing 12.08" refers to "Personality Disorders," which is one of the Commissioner's "Listing of

13   Impairments," at 20 C.F.R. Part 404, Subpart P, Appx. 1.

14   In a decision dated September 20, 2012, the ALJ issued an unfavorable decision, finding

15   plaintiff "not disabled" under Section 1614(a)(3)(A) of the Act, 42 U.S.C. § 1382c(a)(3)(A).

16   AR 11-22 (decision and exhibit list).  Plaintiff asked the Appeals Council ("Council") to review

17   the ALJ's decision.  AR 7 & 299-302.  The Council denied review on December 30, 2013,

18   leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  AR 2-6.

19   Plaintiff filed this action on February 25, 2014.  ECF No. 1; see 42 U.S.C. § 1383(c)(3).  In due

20   course, plaintiff was granted leave to proceed in forma pauperis, the parties consented to the

21

22   ───────────────
   [1] The Administrative Record is electronically filed at ECF No. 13.

23   The official filing date was October 28, 2010.  AR 187.  The "protective" filing date is the date an
   applicant first lets the Commissioner know that he intends to apply for SSI benefits – a date

24   occurring before the official filing date – so long as certain specified conditions are met.  See 20
   C.F.R. §§ 416.340 (written statement) & 416.345 (oral inquiry); see, Wright v. Sullivan, 900 F.2d

25   675, 684 (3rd Cir. 1990) ("[t]he regulations provide that a written application for supplemental
   security income benefits will be retroactively dated to that of an earlier oral inquiry"); Reyes v.

26   Colvin, 2015 WL 337483, at *1 (S.D.N.Y. 2015) ("If certain criteria are met, a claimant may
   establish an application date on the date the Social Security Administration receives a written

27   statement of intent to file for benefits or an oral inquiry about benefits.  This process is referred to
   as protective filing.").

28

jurisdiction of the magistrate judge, the Commissioner filed the administrative record, and the parties filed and fully briefed the pending cross-motions for summary judgment.  ECF Nos. 3, 7, 9, 13, 14, 20 & 22.

Plaintiff seeks reversal and remand for calculation and payment of benefits, or in the alternative, remand for further proceedings.  Plaintiff argues that the ALJ erred: (1) by failing to find that plaintiff meets the requirements of Listing 12.08; (2) by finding residual functional capacity that is materially inconsistent with the opinions of the consultative examiners; (3) in discounting plaintiff's testimony; and (4) in discounting the testimony of plaintiff's sister.[2]

The Commissioner argues that the ALJ: (1) properly considered the medical evidence; (2) properly found that plaintiff was not fully credible; and (3) properly considered the statements of plaintiff's sister.

For the reasons that follow, the court will grant plaintiff's motion for summary judgment and remand for an award of benefits, and will deny the Commissioner's cross-motion for summary judgment.

## II.  FACTUAL BACKGROUND

Plaintiff was born on April 17, 1956, and was nearly 54 years old on the alleged onset date of his disabilities, March 13, 2010.  In his youth, plaintiff had a propensity for violence that resulted in suspensions and expulsions from school.  AR 14, 371.  He was sent to the California Youth Authority at age 15.  AR 371.  Plaintiff dropped out of high school, and does not have a General Equivalency Diploma ("GED").  AR 28.  He was arrested at age 18 for drug possession, and has been sentenced to prison on multiple occasions.  AR 14, 371.  Plaintiff has a 23-year history of heroin and cocaine dependence, but reports that he last used those drugs in 2005, aside from a brief relapse in 2011.  AR 15, 35 & 309.

It appears that plaintiff first received mental health services in 2004 while he was in

---

[2]  Plaintiff does not challenge the ALJ's findings that plaintiff's mood disorder and his heroin/cocaine dependence in remission do not meet or medically equal the severity of any of the listed impairments, specifically, Listings 12.04 (Affective Disorders) and 12.09 (Substance Addiction Disorders).  While plaintiff's brief makes passing references to some of the characteristics of these two Listings, he does not specifically mention either one in his brief.

1  prison, where he was diagnosed with schizophrenia and bipolar disorder, and where he

2  participated in mental health counseling.  AR 15.  After release, plaintiff attended and graduated

3  from the Delancey Street Treatment Program in 2008.  AR 325.  Plaintiff returned to prison,

4  apparently on a parole violation, in July 2009, where he was diagnosed with Psychosis NOS

5  ("Not Otherwise Specified"), Mood Disorder NOS, Polysubstance dependence in remission,

6  Schizoaffective Disorder and Bipolar Disorder NOS.  AR 309-12, 322 & 323.

7       Plaintiff has a brief work history, having worked as a prep cook for 2 months, a furniture

8  stripper for 1 month, and a security guard for 2 months, all in 2008.  AR 236.  Plaintiff's longest

9  period of employment was six months at the restaurant at the Delancey Street Program,

10  apparently while he was in treatment there.  AR 318.

11                          III.  LEGAL STANDARDS

12       The Commissioner's decision that a claimant is not disabled will be upheld "if it is

13  supported by substantial evidence and if the Commissioner applied the correct legal standards."

14  Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the

15  Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'"  Andrews

16  v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).[3]

17       Substantial evidence is "more than a mere scintilla," but "may be less than a

18  preponderance."  Molina v. Astrue , 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such

19  evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v.

20  Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the

21  record can constitute substantial evidence, only those 'reasonably drawn from the record' will

22  suffice."  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

23  Although this court cannot substitute its discretion for that of the Commissioner, the court

24  nonetheless must review the record as a whole, "weighing both the evidence that supports and the

25  _____

26  [3]  The right to judicial review of determinations under Title XVI is provided by 42 U.S.C.
    § 1383(c)(3), which provides that "The final determination of the Commissioner of Social
    Security after a hearing under paragraph (1) shall be subject to judicial review as provided in

27  section 405(g) of this title to the same extent as the Commissioner's final determinations under
    section 405 of this title."

28

                                    4

1   evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Secretary of HHS,

2   846 F.2d 573, 576 (9th Cir.1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The

3   court must consider both evidence that supports and evidence that detracts from the ALJ's

4   conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

5        "The ALJ is responsible for determining credibility, resolving conflicts in medical

6   testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th

7   Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of

8   which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas v. Barnhart,

9   278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the

10  ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."  Orn

11  v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.

12  2003) ("It was error for the district court to affirm the ALJ's credibility decision based on

13  evidence that the ALJ did not discuss").

14        The court will not reverse the Commissioner's decision if it is based on harmless error,

15  which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

16  ultimate nondisability determination.'"  Robbins v. SSA, 466 F.3d 880, 885 (9th Cir. 2006)

17  (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400

18  F.3d 676, 679 (9th Cir. 2005).

19                    IV.  RELEVANT LAW – TITLE XVI

20        Supplemental Security Income ("SSI") is available under Title XVI of the Social Security

21  Act (the "Act") for every income-eligible individual who is "disabled."  42 U.S.C. § 1381a;

22  Department of HHS v. Chater, 163 F.3d 1129, 1133 (9th Cir. 1998) ("The Social Security Act

23  directs the Commissioner of the Social Security Administration to provide benefits to all

24  individuals who meet the eligibility criteria").  Plaintiff is "disabled" if he is "'unable to engage in

25  substantial gainful activity due to a medically determinable physical or mental impairment . . ..'"

26  Gutierrez v. Commissioner, 740 F.3d 519, 523 (9th Cir. 2014) (quoting 42 U.S.C.

27  ////

28  ////

§ 1382c(a)(3)(A)); <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987) (same).[4]

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to SSI benefits. 20 C.F.R. § 416.920(a)-(g); <u>Barnhart v. Thomas</u>, 540 U.S. 20, 25 & 25 n.1 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title XVI, as well as Title II). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. § 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

<u>Id.</u>, § 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

<u>Id.</u>, § 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

<u>Id.</u>, § 416.920(a)(4)(iv), (e) & (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

<u>Id.</u>, § 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. <u>Bowen</u>, 482 U.S. at 146 n.5; <u>Burch</u>, 400 F.3d at 683 (plaintiff "bears the burden of proving that ... she has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations. . . . This Court has held that a claimant carries

---

[4] Title II of the Act provides for Disability Insurance Benefits, which are paid to eligible disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. This program defines disability in the same way as Title XVI. <u>Bowen</u>, 482 U.S. at 140.

1    the initial burden of proving a disability") (citing <u>Swenson v. Sullivan</u>, 876 F.2d 683, 687 (9th

2    Cir. 1989)).  The Commissioner bears the burden if the sequential evaluation process proceeds to

3    step five.  <u>Id.</u>

4          When the plaintiff claims a mental impairment, however, the ALJ is required to follow a

5    "special technique" at Steps Two and Three, to evaluate the plaintiff's disability.  20 C.F.R.

6    § 419.920a(a).  At Step Two, the ALJ first evaluates plaintiff's "pertinent symptoms, signs, and

7    laboratory findings" to determine whether he has "a medically determinable mental

8    impairment(s)."  20 C.F.R. § 419.920a(b)(1); <u>Keyser</u>, 648 F.3d at 725 (interpreting 20 C.F.R.

9    § 1520a, the parallel, and identically worded, regulation under Title II).  Second, the ALJ rates

10   "the degree of functional limitation" caused by the mental impairments just identified, in four

11   broad areas of functioning: activities of daily living; social functioning; concentration, persistence

12   or pace; and episodes of decompensation.  20 C.F.R. § 416.920a(b)(2) & (c)(1)-(3); <u>Keyser</u>, 648

13   F.3d at 725.  The degrees can be "none," "mild," "moderate," "marked," or "extreme."  20 C.F.R.

14   § 416.920a(c)(4).  Episodes of decompensation are ranked "none," "one or two," "three," and

15   "four or more."  <u>Id.</u>  Third, the ALJ determines the severity of the mental impairment, "in part

16   based on the degree of functional limitation."  20 C.F.R. § 416.920a(d); <u>Keyser</u>, 648 F.3d at 725.

17         The ALJ proceeds to Step Three only if the mental impairment is "severe."  <u>Keyser</u>, 648

18   F.3d at 725.  The Commissioner documents this "special technique" in a "Psychiatric Review

19   Technique Form ('PRTF')."  <u>Id.</u>; <u>see</u> AR 41-51.  At Step Three, the ALJ must determine if the

20   severe mental impairment identified in Step Two meets or equals the severity of a mental

21   impairment in the Listings.  20 C.F.R. § 416.920a(d)(2); <u>Keyser</u>, 648 F.3d at 725.  If it does not,

22   the ALJ goes on to Step Four, returning to the sequential analysis.

23                        V.  THE ALJ's REVIEW OF THE RECORD

24         A.  <u>California Department of Corrections and Rehabilitation</u>

25         After plaintiff returned to prison in July 2009 for a parole violation, he was evaluated by

26   staff of the California Department of Corrections and Rehabilitation ("CDCR").  AR 16, 305-23

27   (Exh. 1F).  There, he was diagnosed with Bipolar Disorder NOS, Alcohol Abuse, and a history

28   ("hx") of heroin use in remission for five years.  AR 16, 322.  Upon referral to a psychiatrist for

1   medication management, he was diagnosed with Psychosis NOS, Mood Disorder NOS and

2   Polysubstance Dependence in remission.  AR 16, 323.

3        B.  Parole Outpatient Clinic

4        After plaintiff was released from prison in 2009, he reported to the Parole Outpatient

5   Clinic ("POC").  There, he was seen and evaluated by several different mental health

6   professionals.

7        1.  J. Frank, Ph.D.

8        On December 4, 2009, J. Frank, Ph.D. conducted an initial evaluation of plaintiff at the

9   POC, and further examined plaintiff at other times.  AR 335-44 (Exh. 4F).  Dr. Frank diagnosed

10  plaintiff with "Psychosis NOS, in partial remission on meds," and "Mood Disorder NOS, with

11  Bipolar features."  AR 332, 335, 341.

12       2.  John Lindgren, M.D.

13       Dr. John Lindgren, M.D., a staff psychiatrist at the POC, examined plaintiff several times

14  from on December 21, 2009 (before the March 13, 2010 alleged onset date of plaintiff's

15  disabilities), through May 5, 2011.  AR 335-44 (Exh. 4F), 345-59 (Exh. 5F) & 382-400

16  (Exh. 10F).  Each time, Dr. Lindgren's diagnosis was "Psychotic Disorder NOS," and "Mood

17  Disorder NOS."  Dr. Lindgren also ranked plaintiff's General Assessment of Function ("GAF")

18  score.[5]  He ranked plaintiff's GAF once at 58 (AR 397) and once at 60 (AR 331).[6]

19  _____

  [5]

20

21         A GAF score is a rough estimate of an individual's psychological,
       social, and occupational functioning used to reflect the individual's
       need for treatment.  . . .  Although GAF scores, standing alone, do

22         not  control  determinations  of  whether  a  person's  mental
       impairments  rise  to  the  level  of  a  disability  (or  interact  with

23         physical  impairments  to  create  a  disability),  they  may  be  a  useful
       measurement. . . .  GAF scores are typically assessed in controlled,

24         clinical  settings  that  may  differ  from  work  environments  in
       important respects.  See, e.g., Titles II & XVI: Capability to Do

25         Other Work – The Medical-Vocational Rules As A Framework for
       Evaluating  Solely  Nonexertional  Impairments,  SSR  85-15,

26         1983-1991 Soc. Sec. Rep. Serv. 343 (S.S.A. 1985) ("The mentally
       impaired  may  cease  to  function  effectively  when  facing  such

27         demands  as  getting  to  work  regularly,  having  their  performance
       supervised, and remaining in the workplace for a full day.").

28  (continued…)

### 3. James Johnson, LCSW

James Johnson, LCSW, is a social worker at the POC. AR 338. He met with plaintiff many times, from December 21, 2009 to October 10, 2010, and reported diagnoses of Antisocial Personality Disorder, Psychotic Disorder NOS and opioid and cocaine dependence (but currently clean and sober). See Exhs. 4F & 5F. Of the many occasions where Johnson reported a diagnosis of anti-social personality disorder, he on one occasion noted, "Leaning more toward malingering of depressive symptoms." See AR 338 (February 26, 2010).

### 4. Dr. James Scaramozzino, Ph.D.

Dr. James Scaramozzino, Ph.D., conducted a "comprehensive psychiatric evaluation" of plaintiff on February 5, 2010. AR 324-30 (Exh. 2F). He diagnosed plaintiff with, among other things, "Heroin opioid dependence in remission," "Mood disorder NOS" and "Antisocial personality disorder." Dr. Scaramozzino ranked plaintiff's "functional assessment" to be "markedly" and/or "severely" impaired in the following areas: ability to accept instructions from a supervisor and respond appropriately; ability to complete a normal workday and workweek without interruptions at a consistent pace; ability to interact with coworkers; ability to deal with various changes in the work setting; and social functioning. AR 329-30. The remaining areas were not markedly impaired. Id. However, "[t]he likelihood of the claimant emotionally deteriorating in a work environment is high . . .." AR 330. Dr. Scaramozzino ranked plaintiff's GAF at 50.[7]

### 5. Douglas R. Brewer, LCSW

On April 20, 2011, Brewer Douglas R. Brewer, LCSW conducted an evaluation of plaintiff. AR 397-400 (Exh. 10F). Brewer's "diagnostic impression" of plaintiff was "Psychotic Disorder NOS," "Cocaine Dependence," "Opioid Dependence," and he ranked plaintiff's GAF

_____

Garrison v. Colvin, 759 F.3d 995, 1003 n.4 (9th Cir. 2014) (some internal quotation marks omitted).

[6] "According to the DSM–IV, . . . [a] GAF score between 51 to 60 describes "moderate symptoms" or any moderate difficulty in social, occupational, or school functioning." Garrison, 759 F.3d at 1003 n.4.

[7] "[A] GAF score between 41 and 50 describes 'serious symptoms' or 'any serious impairment in social, occupational, or school functioning.'" Garrison, 759 F.3d at 1003 n.4.

at 60.  AR 398.  Brewer then saw plaintiff regularly (weekly, biweekly or monthly), with intermittent medication evaluations by "Jaime Ortiz, M.D."  AR 381-400.  Brewer regularly ranked plaintiff's GAF at 60.

>    6.  <u>Dr. Sylvia Torrez, Psy.D.</u>

Dr. Sylvia Torrez, Psy.D., conducted a "comprehensive psychiatric evaluation" of plaintiff on June 13, 2011.  AR 368-75 (Exh. 8F).  She diagnosed plaintiff with, among other things "Mood Disorder Not Otherwise Specified," and "Antisocial Personality Disorder."  AR 373-74. Dr. Torrez found plaintiff's "symptom severity" to be "within the moderate range."  AR 374.  She ranked plaintiff's "functional assessment" to be "poor to fair" in the following areas: ability to accept instructions from a supervisor and respond appropriately; ability to interact with coworkers; and ability to deal with the various changes in the work setting.  AR 374-75.  Dr. Torrez ranked all other functional assessments as "good" or "fair."  AR 374-75.  She also gave plaintiff a GAF score of 55.

>    7.  <u>Jaime Ortiz, M.D.</u>

Dr. Jaime Ortiz, M.D., was a psychiatrist at POC who saw plaintiff several times from September 28, 2011 through March 21, 2012, apparently for medication management.  <u>See</u> Exh. 10F.  Dr. Ortiz did not report any diagnoses, nor offer a GAF ranking.

>    C.  <u>Dan Funkenstein, M.D.</u>

On January 28, 2011, Dan Funkenstein, M.D., authored the Psychiatric Review Technique Form ("PRTF"), regarding plaintiff.  AR 41-51 (Exh. 1A).  The PRTF and accompanying "Case Analysis" (Exh. 3A), are based upon a case review, and it appears that Dr. Funkenstein was not a treating or examining doctor.  <u>See</u> Exhs. 1A, 2A & 3A.

The PRTF reports (1) "Schizophrenic, Paranoid and Other Psychotic Disorders," specifically, "Psychosis, NOS," (2) "Affective Disorders," specifically, "Mood Disorder, NOS," and (3) "Substance Abuse Disorders," specifically, "Hx DAA [history of Drug Addiction and Alcoholism]."  AR 41-47.  The PRTF also concluded that plaintiff was not markedly limited in any functional area.  AR 49 & 52-53 (Exh. 2A).

////

1

### VI.  THE ALJ's DECISION

2      The ALJ made the following findings:

3              1.      The claimant has not engaged in substantial gainful activity
since October 25, 2010, the application date (20 CFR 416.971 *et
4      *seq.*).  Exhibits 9D, 10D.

5              2.      The claimant has the following severe impairments: mood
disorder NOS, antisocial personality disorder, and heroin/cocaine
6      dependence in remission (20 CFR 416.920(c)).

7              3.      The claimant does not have an impairment or combination
of impairments that meets or medically equals the severity of one of
8      the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1
(20 CFR 416.920(d), 416.925 and 416.926).

9

10             The severity of the claimant's mental impairments, considered
singly and in combination, do not meet or medically equal the
11     criteria of listings 12.04, 12.07,[8] or 12.09.

12             4.      The claimant has the residual functional capacity to perform
a full range of work at all exertional levels but is limited to
13     performing non-public, simple, routine or repetitive tasks.

14             5.      The claimant is capable of performing past relevant work as
a woodworking helper.  This work does not require the performance
15     of work related activities precluded by the claimant's residual
functional capacity (20 CFR 416.965).

16     AR 13-17.  The ALJ concluded:

17             6.      The claimant has not been under a disability, as defined in
the Social Security Act, since October 25, 2010, the date the
18     application was filed (20 CFR 416.920(f)).

19     AR 17.

20                                     ### VII.  ANALYSIS

21         At Step One, the ALJ found that plaintiff has not engaged in substantial gainful activity, a

22     finding that is not challenged on this appeal.

23         At Step Two, the ALJ found that plaintiff has three "severe" mental impairments, namely,

24     Mood Disorder NOS, Antisocial Personality Disorder, and Heroin/cocaine Dependence in

25

26     ---
[8]  The court assumes that the ALJ's reference to "Listing 12.07," which covers "Somatic
disorders," is a typographical error for Listing 12.08, which covers "Personality disorders."
27     There appears to be no reference in the evidence, or in the ALJ's decision, to anything relating to
"somatic disorders."
28

Remission.  AR 13.  These findings are also not challenged on this appeal.  Assuming the ALJ followed the required "special procedure," the Step Two findings mean that (1) plaintiff has the three listed medically determinable mental impairments, (2) the ALJ has rated the degree of functional limitations for the four functional areas, caused by these impairments, and (3) the ALJ has determined that the mental impairments are severe, based in part on the degree of functional limitation.  See Keyser, 648 F.3d at 725.

A.  Step 3: Whether Plaintiff's Impairments Meet or Medically Equal Listing 12.08(B)

Plaintiff argues that plaintiff's antisocial personality disorder meets or equals the severity of Listing 12.08, Personality Disorders.  ECF No. 14-1 at 17.  In order to meet the severity of that listing, plaintiff must show that at least one requirement of Listing 12.08(A) is met, and that at least two of the requirements of Listing 12.08(B) are met.  The ALJ considered only the paragraph "B" criteria.  AR 13.

Paragraph B is met if plaintiff can show: (1) that he has at least two of the "marked" restrictions listed there, (a) of activities of daily living, (b) in maintaining social functioning, or (c) in maintaining concentration, persistence or pace; or (2) one "marked" restriction together with "repeated episodes of decompensation, each of extended duration."  Listing 12.08(B).  The ALJ specifically found that plaintiff has: "[1] only mild restriction in activities of daily living; [2] moderate difficulties in social functioning; and [3] moderate difficulties with regard to concentration, persistence or pace."  AR 13.  He also found that plaintiff "has experienced no episodes of decompensation, which have been of extended duration."  AR 13-14.[9]

a.  Activities of daily living

The ALJ found that plaintiff had "only mild restriction in activities of daily living."  AR 13.  This area includes "adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and

---

[9]  By finding only "mild" to "moderate" restrictions and difficulties, the ALJ implicitly found that plaintiff did not have "marked" restrictions in those areas.  A "marked" limitation "means more than moderate but less than extreme."  Listing 12.00(C) ("Mental Disorders . . . Assessment of severity").

hygiene, using telephones and directories, and using a post office." Listing 12.00(C).  Plaintiff's

ability to do these, and similar, things depends upon whether they are done independently,

appropriately, effectively and sustainably, and "independent of supervision or direction."

Listing 12.00(C)(1).  Thus, even if plaintiff can do these things, he may still have a "marked"

limitation in this area if he has "serious difficulty performing them without direct supervision, or

in a suitable manner, or on a consistent, useful, routine basis . . . ."  Id.

### i. Plaintiff's showing

Plaintiff's sister's testimony indicates that plaintiff needs assistance with "filling out

paperwork," and "looking things up on line," which in her view, are things that "he should be

able to do on his own."  AR 298.  In addition, while plaintiff states that he goes to church "every

Sunday," AR 252 (Exh. 5E), he also states that he needs "to be reminded to go places."  Id.  His

sister states that plaintiff "has to be encouraged and reminded to go" to church.  AR 260 (Exh.

6E).  Similarly, although plaintiff states that he sometimes does laundry and cooking, he and his

sister both state that he needs constant reminders to do the laundry, and other house chores, as

well as to take his medicine, and get his hair cut.  AR 250 & 258.  Moreover, his sister states that

reminding plaintiff of these chores usually results in an argument.  Plaintiff also has to be

reminded to take his medicine.  AR 250 (Exh. 5E) & 258 (Exh. 6E).  Dr. Torrez states that

plaintiff "would benefit from the assistance of a payee to help manage his funds," a component of

activities of daily living.  AR 374; see Listing 12.00(C)(1) (includes "paying bills").

On the other hand, plaintiff's evidence from his sister and his own self-assessment shows

that he prepares his own meals daily.  AR 250 & 258.  Plaintiff has no problems with his own

personal care.  AR 257.  He takes daily walks outside.  AR 251 & 259.  He shops for food and

basic hygiene items, although he is "indecisive about what he wants."  AR 251 & 259.  He

handles money properly and pays his bills.  AR 251 & 259.

### ii. ALJ's determination

The ALJ found that plaintiff had only "mild restriction" in this area.  AR 13.  Plaintiff's

abilities in this area are mixed, as discussed above, but there is substantial evidence in the record

for the ALJ to find that plaintiff has only "mild" restrictions in his ability to conduct the activities

of daily living.

Moreover, there is no medical evidence or opinion in the record showing that plaintiff had a marked or severe impairment in this area.  The ALJ indicates that he relied on the reports of Drs. Torrez and Scaramozzino.  Dr. Torrez's only comment in this area stated that plaintiff "would benefit from the assistance of a payee to help manage his funds." AR 374; see Listing 12.00(C)(1) (includes "paying bills").[10]  Dr. Scaramozzino opined more directly that plaintiff is "not significantly impaired" in his daily activities.  AR 330 (Exh. 2F).

iii.  Resolution

The ALJ's conclusion is supported by substantial evidence in the record showing that plaintiff does engage in the activities of daily living, with only one basic limitation, namely, the need to be reminded of chores, medicine-taking and other activities.  The ALJ's determination is therefore supported by substantial evidence.  See Thomas, 278 F.3d at 957 ("[t]he opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record") (citations and internal quotation marks omitted).

b.    Social functioning

The ALJ found that plaintiff had only "moderate difficulties in social functioning." AR 13.  Social functioning includes the capacity "to interact independently, appropriately, effectively, and on a sustained basis" with other people, that is, the ability to get along with other people.  Listing 12.00(C)(2).  Impaired social functioning can be shown by, for example, "a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation." Id.  In work situations, social functioning may involve "interactions with the public, responding appropriately to persons in authority (e.g., supervisors), or cooperative behaviors involving coworkers." Id.

---

[10]  Dr. Torrez's "functional assessment" principally addresses plaintiff's ability to function in the workplace, namely, to understand and remember instructions, maintain concentration and attention, accept instructions from a supervisor, sustain an ordinary routine without special supervision, complete a normal workday and workweek, interact with coworkers, and deal with changes in the work setting.  AR 374-75 (Exh. 8F).

1                                    i.  Plaintiff's showing

2            Plaintiff points to the opinions of two examining doctors, Dr. Torrez and

3    Dr. Scaramozzino, as evidence that he has a "marked" impairment in the area of social

4    functioning.  In fact, Dr. Scaramozzino ranks plaintiff as "markedly" or "severely" impaired in

5    every area of social functioning he considered: ability to accept instructions from a supervisor and

6    respond appropriately; ability to complete a normal workday and workweek without interruptions

7    at a consistent pace; ability to interact with coworkers; and ability to deal with the various

8    changes in the work setting.  AR 330.  Dr. Torrez's opinion is "consistent," as the ALJ

9    recognized, in ranking plaintiff on the "social functioning" factors.  AR 15.  She rates plaintiff as

10   "fair to poor" in all the areas she considered: ability to accept instructions from a supervisor and

11   respond appropriately; ability to interact with coworkers; and ability to deal with the various

12   changes in the work setting.  AR 374-75.

13           Both of these opinions are fully supported by the evidence in the record.  Plaintiff's sister

14   reports that plaintiff does "not well at all" with authority figures, "has always had issues all his

15   life with authority," "doesn't like change" and "[t]akes time to get used to it."  AR 257 & 262.

16   Plaintiff's testimony is that he has a very brief work history, and that history shows a pattern of

17   inability to get along with his bosses.  He worked as a chef, but was fired when he got into an

18   argument with his boss.  AR 29.  He worked in a shop stripping and refinishing furniture, but left

19   after a few months, after he got into an argument with his boss about pay.  AR 30.[11]

20           The other areas of social functioning involve the ability to get along with others.  Here,

21   plaintiff's sister reports that plaintiff has threatened his own mother with a knife, is verbally

22   abusive to his sisters, has no friends, keeps to himself, and that "[n]o one wants to be around

23   him."  AR 261.  Plaintiff reports that he thinks "people are out to harm me," that he is unable to

24   "[d]eal with people," and that he gets mad "a lot," including fighting with his mother "almost

25   every day."  AR 249, 252-54.  Plaintiff is socially isolated in that he stays home all day and

26   _____

27   [11]  Plaintiff also worked for "a couple of months" as a guard, but it appears he left that job to take
     the job as a chef.  AR 29.  It is not clear that any conclusion can be drawn from this part of
     plaintiff's work history, except that he lasted there only a short time.

28

1   watches TV, other than his daily walk.  See AR 248.[12]

2                              ii.  The ALJ's determination

3          The ALJ found that plaintiff had only "moderate difficulties in social functioning."

4   AR 13.  The ALJ does not explain how he reached this conclusion in light of Dr. Scaramozzino's

5   "marked" and "severely marked" impairment findings, and Dr. Torrez's "consistent" findings of

6   "fair to poor" functioning.  Nor does the ALJ explain his conclusion in light of the record

7   evidence of plaintiff's apparently severe inability to get along with others.  He says that the

8   "sister's statements were consistent" with plaintiff's, but does not address the statements of either

9   one.  See AR 16.

10                             iii.  Resolution

11         In light of all the evidence of marked impairment in this area, and the lack of evidence

12  contradicting it, the court finds that there is no substantial evidence supporting the ALJ's finding

13  that plaintiff had only "moderate limitation" in social functioning.

14                    c.       Concentration, persistence or pace

15         The ALJ found that plaintiff had only "moderate" difficulties with regard to concentration,

16  persistence or pace.  AR 13.  This area covers the ability to maintain attention and concentration

17  sufficiently to carry out work tasks.  Listing 12.00(C)(3).  Abilities in this area include the ability

18  to carry out sustained work and working at a consistent pace until the task is finished.

19  Impairments may be shown by inability to complete tasks without extra supervision or assistance.

20                             i.  Plaintiff's showing

21         Plaintiff's sister reports that plaintiff "[d]oes not complete all the way through," and that

22  he "can't keep still or focused long enough," although she appears to be referring to his

23  television-watching.  AR 260.  She further asserts more generally that plaintiff "[g]ets frustrated

24  [too] quick to complete tasks and concentrate."  AR 261.  There are no medical opinions showing

25  plaintiff to be markedly or severely impaired in this area.

26

27  _____

    [12]  In addition, in the past, plaintiff was constantly getting arrested.  AR 14, 371.
28

1

### ii.  ALJ's determination

The ALJ states that he considered and credited Dr. Torrez's opinion, and also stated that Dr. Torrez's opinion that it was "consistent" with Dr. Scaramozzino's examination.  AR 15. Dr. Torrez's opinion, in ranking plaintiff on the "concentration, persistence, or pace" factors, rates plaintiff as "good" or "fair" in all the areas she considered: ability to understand and remember instructions; maintaining concentration and attention; sustaining an ordinary routine without special supervision; and ability to complete a normal workday and workweek without interruptions at a constant pace.  AR 374-75.  Dr. Scaramozzino's opinion was mostly consistent, in that he found that plaintiff was "not significantly" impaired in most of the areas Dr. Torrez addressed.  However, unlike Dr. Torrez, Dr. Scaramozzino found that plaintiff's ability to complete a normal workday and workweek without interruptions at a constant pace, was "markedly to extremely impaired."  AR 329-30.  The ALJ decision does not acknowledge this difference, nor acknowledge or address Dr. Scaramozzino's opinion about this area of functioning.

### iii.  Resolution

Notwithstanding the "normal workday" issue, the opinions of the two doctors constitute substantial evidence that plaintiff is not markedly impaired in this area of functioning.

### d.  Decompensation

Plaintiff does not argue, or mention, decompensation in his brief to this court, so the court will not consider that issue.

### e.  Plaintiff does not meet or equal Listing 12.08

Plaintiff has marked limitations in only one area of functioning, namely, social functioning.  The ALJ's determination that plaintiff was not markedly limited in that area is therefore harmless error for purposes of Step Three, since plaintiff could only meet the Listing if he were markedly impaired in two areas, or in one area if he met the decompensation criteria.

### B.  Residual Functional Capacity ("RFC")

Having found that plaintiff's impairments, though "severe" for purposes of Step Two, do not meet or equal an impairment in the Listings, the ALJ was required to "go on to consider

17

1    whether the individual can meet the mental demands of past relevant work in spite of the limiting

2    effects of his or her impairment . . . ."  SSR 85-15, at * 5, 1985 WL 56857 (S.S.A.); 20 C.F.R.

3    § 416.920(e); Garcia v. Commissioner, 768 F.3d 925, 928 (9th Cir. 2014) ("Residual Functional

4    Capacity (RFC) is the work that an individual is capable of performing in spite of her

5    limitations") (citing 20 C.F.R. § 416.945(a)(1)).

6            1.  Evidence

7            As discussed above, the uncontradicted conclusions of Drs. Torrez and Scaramozzino,

8    both of whom were examining physicians, imposed several functional limitations on plaintiff's

9    ability to work.[13]  The ALJ "must provide 'clear and convincing' reasons for rejecting the

10   uncontradicted opinion of an examining physician."  Lester v. Chater, 81 F.3d 821, 830 (9th

11   Cir. 1995) (quoting Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)).  Even if the examining

12   doctor's opinion is contradicted by another doctor, the ALJ can reject his opinion only "for

13   specific and legitimate reasons that are supported by substantial evidence in the record."  Lester,

14   81 F.3d at 830-31 (citing Andrews, 53 F.3d at 1043).

15          First, Dr. Torrez found that plaintiff's ability to accept instructions from a supervisor and

16   respond appropriately, and his ability to interact with coworkers, are both "poor to fair."  AR 374

17   & 375.  Dr. Scaramozzino found that plaintiff's abilities in these areas are "markedly to extremely

18   limited."  AR 330.[14]  At the hearing, the ALJ specifically asked the Vocational Expert ("VE"),

19   about these functional limitations.  When the ALJ asked if a hypothetical individual would remain

20   employed in the general economy if he "got into conflicts with the supervisors and co-workers on

21   a regular basis," the VE testified "No, your honor."  AR 38; see also, 20 C.F.R. § 416.945(c) ("[a]

22   limited ability to carry out certain mental activities, such as . . . responding appropriately to

23

24   [13]  In the Ninth Circuit, courts "distinguish among the opinions of three types of physicians: (1)
     those who treat the claimant (treating physicians); (2) those who examine but do not treat the
25   claimant (examining physicians); and (3) those who neither examine nor treat the claimant
     (nonexamining physicians)."  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

26   [14]  Dr. Scaramozzino also found that these limitations were "primarily due to his irritability, sense
     of entitlement and lack of willingness to cooperate in the work environment."  AR 330.
27   Dr. Scaramozzino does not indicate the significance of this additional finding, and the ALJ makes
     no mention of it.

28

supervision, [and] coworkers . . . may reduce your ability to do past work and other work").

Second, Dr. Torrez found that plaintiff's ability to deal with the various changes in the work setting is "poor to fair."  AR 375.  Dr. Scaramozzino found that plaintiff's ability in this area is "markedly impaired."  AR 330.

Third, Dr. Torrez found that plaintiff's ability to complete a normal workday and workweek without interruptions at a constant pace, is "fair."  AR 375.  Dr. Scaramozzino found that plaintiff's ability in this area is "markedly to extremely impaired."  AR 330.  At the hearing, the ALJ specifically asked about this functional limitation.  When asked if a hypothetical individual could maintain employment in the general economy if he "suddenly leaves work, gets angry and suddenly leaves work during the shift, storms off, that happens a couple of times . . .," the VE testified "No, your honor."  AR 38; see also, 20 C.F.R. § 416.945(c) ("[a] limited ability to carry out certain mental activities, such as . . . responding appropriately to . . . work pressures in a work setting, may reduce your ability to do past work and other work").

Fourth, Dr. Torrez found that the likelihood of plaintiff emotionally deteriorating in the work environment is "fair."  AR 375.  Dr. Scaramozzino rated plaintiff's chances of doing this, as "high."  AR 330.

### 2. The ALJ's determination

In considering plaintiff's residual functional capacity, the ALJ recited all four above limitations cited by Dr. Torrez (and echoed in Dr. Scaramozzino's report), and stated that he credited her opinion.  See AR 15 & 16.  However, the ALJ then rejected all four limitations cited by both examining doctors, without any explanation, save that he did not find those "alleged limitations," whether asserted by plaintiff or by the examining doctors, to be "credible."  He states:

> [T]he claimant's statements concerning the intensity, persistence and limiting effects of these [his alleged] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

AR 16.  The ALJ does not, however, identify which of plaintiff's statements he is referring to, or why they undermine plaintiff's credibility.  Nor does he explain why plaintiff's statements about

19

these limitations are even relevant, when it was the two examining doctors who opined on the

functional limitations, not plaintiff.  The ALJ does list several statements by plaintiff in the

following two paragraphs, but only one of them (discussed below), appears to have anything to do

with the four functional limitations discussed above.  Although the ALJ is charged with

credibility determinations, the court does not simply accept a completely unsupported, boilerplate

assertion of lack of credibility.  Rather, the credibility determination must have support in the

record:

> An ALJ's "vague allegation" that a claimant's testimony is "not
> consistent with the objective medical evidence," without any
> "specific findings in support" of that conclusion is insufficient for
> our review.   [Vasquez v. Astrue, 572 F.3d 586, 592 (9th
> Cir. 2009)].   As our sister circuits have concluded, "[c]redibility
> findings must have support in the record, and hackneyed language
> seen universally in ALJ decisions adds nothing."   Shauger v.
> Astrue, 675 F.3d 690, 696 (7th Cir.2012); see also Hardman v.
> Barnhart, 362 F.3d 676, 679 (10th Cir. 2004).   The ALJ must
> identify the testimony that was not credible, and specify "what
> evidence undermines the claimant's complaints."   Reddick v.
> Chater, 157 F.3d 715, 722 (9th Cir.1998).

Treichler v. Commissioner,  775 F.3d 1090, 1102 (9th Cir. 2014).

Indeed, the ALJ's invocation of the particular boilerplate used here, coupled with a lack of

analysis, was specifically disapproved by the Ninth Circuit:

> The ALJ did not, however, "specifically identify the testimony" he
> found not credible. [Holohan v. Massanari, 246 F.3d 1195, 1208
> (9th Cir. 2001)].  Rather, he made only the single general statement
> that "the claimant's statements concerning the intensity, persistence
> and limiting effects of these symptoms are not credible to the extent
> they are inconsistent with the above residual functional capacity
> assessment."  ALJs routinely include this statement in their written
> findings as an introduction to the ALJ's credibility determination.
> See, e.g., Kamann v. Colvin, 721 F.3d 945, 949-51 (8th Cir. 2013);
> Bjornson v. Astrue, 671 F.3d 640, 645-47 (7th Cir. 2012).  After
> making this boilerplate statement, the ALJs typically identify what
> parts of the claimant's testimony were not credible and why.  See,
> e.g., Moore v. Colvin, 743 F.3d 1118, 1122 (7th Cir. 2014).

> But here, the ALJ stopped after this introductory remark.  This was
> error and falls short of meeting the ALJ's responsibility to provide
> "a discussion of the evidence" and "the reason or reasons upon
> which" his adverse determination is based.  42 U.S.C. § 405(b)(1).
> . . .

> Nor is the error harmless.  . . . [W]e cannot substitute our conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions.  See Bunnell, 947 F.2d at 346.  Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence. . . .

Treichler,  775 F.3d at 1102-03.

Here, only one statement by plaintiff, identified by the ALJ, had any relation to the functional limitations listed by Drs. Torrez and Scaramozzino.  Specifically, the ALJ notes that plaintiff "reported difficulty dealing with other people . . .."  AR 16.  However, the ALJ does not state why he finds this statement not credible, or what evidence in the record supports his conclusion that it is not credible.  Meanwhile, every other piece of evidence in the record fully supports this statement, including the opinions of the two examining doctors, as discussed above.[15]

The uncontradicted opinions of the examining doctors, Torrez and Scaramozzino, constitute the only medical evidence offered at the hearing or mentioned by the ALJ regarding the limitations listed above.  The ALJ did not provide "clear and convincing" reasons for rejecting the examining doctors' opinions on plaintiff's functional limitations, as required by Pitzer.  Even if the ALJ believed that there was contradictory evidence, he failed to provide "specific and legitimate reasons," supported by "substantial evidence in the record," for rejecting their opinions, as required by Lester.  Under either standard, the court finds that the ALJ's decision is based upon legal error, and is not supported by substantial evidence.  See Pitzer, 908 F.2d at 506 ("where the Secretary has failed to advance any legitimate reasons for disregarding the examining physicians' medical findings, reports, and opinion, we hold that substantial evidence does not support the Secretary's decision").

---

[15]  The ALJ also states that "[n]one of his treating professionals have indicated further limitations."  AR 16.  However, there is no evidence in the record showing that any of the treating professionals were ever asked to opine on the four functional limitations set forth above, or that they offered any opinions on those limitations.  Thus, the fact that they did not indicate "further limitations," does not appear to be relevant.

1          C. Remand

2          Plaintiff asserts that this matter should be remanded for immediate payment of benefits

3   rather than further proceedings.  A remand for further proceedings is unnecessary if the record is

4   fully developed, and it is clear from the record that the ALJ would be required to award benefits.

5   Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  The decision whether to remand for

6   further proceedings turns upon the likely utility of such proceedings.  Barman v. Apfel, 211 F.3d

7   1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000).  Under the law of this Circuit, the court

8   must "direct the award of benefits in cases where no useful purpose would be served by further

9   administrative proceedings, or where the record has been thoroughly developed."  Varney v.

10  Sec'y of HHS, 859 F.2d 1396, 1399 (9th Cir. 1988) (citations omitted).  The Ninth Circuit

11  adopted this rule because it "'recognized the importance of expediting disability claims.'"

12  Holohan, 246 F.3d at 1210 (quoting Ghokassian v. Shalala, 41 F.3d 1300, 1303 (9th Cir. 1994)).

13  "Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating

14  or examining physician, we credit that opinion 'as a matter of law.'"  Lester, 81 F.3d at 834

15  (quoting Hammock v. Bowen, 879 F.2d 498, 502 (9th Cir. 1989)).  Accordingly, the court credits

16  the opinions of Drs. Torrez and Scaramozzino, finding that plaintiff was "markedly" or

17  "severely" impaired (or that his abilities were "fair" or "fair to poor") in the four areas of

18  functioning listed above.

19         The ALJ has already obtained testimony from the Vocational Expert that a hypothetical

20  worker could not maintain any employment in the general economy if he tried to work with the

21  limitations found by the examining doctors.  See AR 38-39.  Moreover, the VE's testimony that

22  such a worker could not maintain employment in the general economy, was not limited to his past

23  work, but applied to any work.  See AR 38 (establishing that hypothetical individual with these

24  limitations could not work "in these jobs or any other jobs") & 39 (same, cannot work "in the

25  general economy").  Accordingly, a remand to revisit the fourth sequential step or to complete the

26  fifth sequential step is not necessary.

27         The record is fully developed, and remand is unnecessary, as the only outcome here, based

28  on this record, is that plaintiff is disabled within the meaning of 42 U.S.C. § 1382c(a)(3)(A).

1                               VIII.  CONCLUSION

2         For the reasons set forth above, IT IS HEREBY ORDERED that:

3         1.  Plaintiff's motion for summary judgment (ECF No. 14) is GRANTED;

4         2.  The Commissioner's cross-motion for summary judgment (ECF No. 20) is DENIED;

5 and

6         3.  This matter is REVERSED and REMANDED to the Commissioner for an award of

7 benefits.

8 DATED: March 24, 2015

9

10 ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28